# CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

## JANUARY TERM, 1913.

---

FRANKLIN STATE BANK, APPELLANT, V. WILLIAM H.
CHANEY ET AL., APPELLEES.

FILED JUNE 16, 1913. No. 17,121.

1. Note: CONSIDERATION: PAROL EVIDENCE. In an action between a
bank, the original payee in a promissory note, and the makers,
parol testimony may be received to establish the defense of no
consideration and to show that the note was given merely for
the convenience of the bank and as a memorandum of a collateral
transaction.

2. Appeal: CONFLICTING EVIDENCE. The verdict of a jury based upon
conflicting evidence will not be interfered with by this court if
there is sufficient competent evidence to support the same.

APPEAL from the district court for Franklin county:
HARRY S. DUNGAN, JUDGE. Affirmed.

W. C. Dorsey and A. H. Byrum, for appellant.

H. W. Short, E. U. Overman and George W. Prather,
contra.

LETTON, J.

This action was brought to recover a balance of $532.50,
with interest, upon a promissory note for $887.75, dated
January 6, 1904, signed by defendants Chaney, Gettle and
Hildreth. Verdict and judgment for defendants Chaney
and Gettle. Plaintiff appeals.

The defendants Chaney and Gettle answered admitting

4  (1)

the execution of the note. They further alleged that defendant Hildreth was the president and practically the owner of the plaintiff bank and was in full charge of its business; that defendants, together with plaintiff and one Doher, had been interested as creditors in a certain brickyard owned by Fitz and Bruce and which was turned over to them; that Fitz and Bruce owed plaintiff $1,000, Gettle $500, Chaney $200, and Doher $200; that plaintiff agreed to operate the brickyard for the benefit of these creditors, paying the claims *pro rata* out of the proceeds of the yard; that to evidence the interest of the bank in the property, and for its convenience solely so that it might carry its interest in the yard as an item of loans and discounts rather than as an item of personal property, and for no other consideration, the note in question was signed by these defendants with their codefendant Hildreth, who was then acting for the plaintiff bank. It is further alleged that afterwards in 1904 it was agreed between the parties that the bank should take the ownership and control of the property without regard to the claims of these defendants, and should sell and dispose of the same to pay its own claim against Fitz and Bruce without accounting to these defendants, and that the surrender of the property and the waiver of their claims should be accepted as payment of any possible liability of defendants on the note.

The reply pleads that from about August 1, 1903, until January 6, 1904, when the note in suit was given, the brickyard was operated by the three defendants, Chaney, Gettle and Hildreth; that the bank advanced various sums of money to them at various times in this period for use in the business; that before the note was executed the bank prepared and submitted to defendants a written statement showing each and every item of the running account, and all debits and credits, and that the balance due the bank on the account was $887.75; that the defendants were afforded an opportunity to inspect and verify each item and make objections thereto, and that defendants executed and delivered the note in payment and settlement

of the stated account and are therefore estopped from setting up the defense of want of consideration. It is further alleged that no part of the indebtedness of Bruce and Fitz is included in the note sued upon. A motion was filed by plaintiff to require the defendants to elect whether they would rely on the defense that the note was a mere memorandum made for the convenience of the bank and without consideration, or upon the defense of settlement or release of liability by a subsequent agreement. This motion was overruled, and this ruling is assigned as error. It is said these defenses are plainly inconsistent, and it is argued that proof introduced to show that when the note was signed by the defendants they incurred no liability in signing it must necessarily disprove the allegation that afterwards they were released from liability by a subsequent agreement. We think these defenses are not so inconsistent that they cannot be pleaded in the same answer. Even if there were no actual liability upon the note for the reasons alleged, the fact that the plaintiff was in possession of a promissory note upon which the defendants' names appeared as makers showed that a liability apparently existed, and this apparent liability might be the moving cause for a subsequent agreement between the parties by which it was extinguished or removed. The test of inconsistency is whether the proof of one defense necessarily disproves the other. *Blodgett v. McMurtry*, 39 Neb. 210; *Nelson & Co. v. Brodhack*, 44 Mo. 596.

After both parties rested, plaintiff moved the court for an order striking from the record and instructing the jury to disregard all that part of the testimony of Chaney and Gettle to the effect that, at the time or just prior to the time the note was executed, they were assured by the plaintiff that they would never be called upon to pay the note, and that the same was and should be no liability against them, for the reason that parol testimony is inadmissible to contradict and vary the terms of a written instrument. This motion was sustained.

Plaintiff now contends that, because the court sustained

its motion to strike this testimony, there was no evidence left upon which this issue should have been submitted. It appears from the record that when the court came to submit the case to the jury, while it instructed them that they should disregard any testimony relative to statements made by the bank or its officers that the defendants were not to be liable upon the note, it further stated in the same instruction: "You may and should consider all the other evidence introduced touching the circumstances surrounding the signing and execution of the note in question, and all testimony of statements made by the parties at the time of the execution of the note which show the purpose for which the note sued on was given, and all other evidence introduced touching the consideration for the signing of said note by the defendants, if any, as defined in these instructions."

By the latter portion of this instruction the testimony as to what was said at the time the note was given with regard to the purpose for which the note was given was again submitted to the jury for its consideration. If the testimony was admissible in the first place, the defendants alone were prejudiced by it being stricken out, and that portion of this instruction which tells the jury to disregard the testimony of defendants in this respect would only be prejudicial to them, and not to plaintiff; so that the fundamental question presented is: Was this testimony proper to be considered by the jury? Plaintiff relies upon the first opinion in *First Nat. Bank v. Burney,* 90 Neb. 432; but the law laid down in this opinion was overruled upon a rehearing of that case (91 Neb. 269), and it was held that as between the parties such testimony may be received to explain the purpose for which the note was given and to show that it was a mere memorandum.

The controlling issue which was presented to the jury for its determination was whether the note was executed and delivered by the defendants to the bank in settlement of a stated account, or whether it was given in renewal of a $1,000 note, which was originally given merely as a con-

venience for the bank and without consideration. It is not practicable in the brief space of this opinion to detail the testimony upon either contention. The testimony with respect to the relations of the parties with each other and with Fitz and Bruce, and to the brickyard property up to the time of the execution, of the $1,000 note, is not inharmonious, but as to what was said at that time, what the purpose was of that instrument, and what were the further transactions between the parties with reference to the operation of the brickyard, it is in almost irreconcilable conflict. The evidence of Mr. Hildreth, corroborated as it was by documentary evidence, would seem to be convincing that the note in suit was given in settlement of the money paid out by the bank for the defendants while they were operating the brickyard; but, as has been said, there is a decided conflict in the evidence on almost every material point, and we are unable to say that there is not sufficient evidence on behalf of the defense to support the verdict on the issue as to want of consideration. There is likewise a sharp conflict in the testimony with reference to a later settlement between the parties. Defendants testify that such was made upon a sufficient consideration, to . wit, their release and cancelation of their respective claims against the brickyard, while the plaintiff testifies that no such release of the defendants from liability ever took place. There seems to be sufficient evidence on this issue also to justify its submission.

While we might have reached the conclusion that the defendants were liable if we had been the triers of fact, the settled rule is that we are not entitled to interfere with the verdict of a jury on conflicting evidence, unless it is manifestly wrong. The instructions, while not entirely consistent, submitted every question of fact in the case, and we do not feel authorized to set aside the verdict.

The judgment of the district court is

AFFIRMED.

ROSE, FAWCETT and HAMER, JJ., not sitting.